Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                              7:20-cv-01810

Oscar Ithier, individually and on behalf of
all others similarly situated,

                              Plaintiff,

              - against -                              Class Action Complaint

Frito-Lay North America, Inc.,

                              Defendant

        Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge:

        1.      Frito-Lay North America, Inc. ("defendant") manufactures, distributes, markets,

labels and sells cheddar and sour cream potato chips purporting to be flavored without artificial

flavor contributing to the characterizing flavor under their Ruffles brand ("Products").

        2.      The Products are available to consumers from retail and online stores of third-parties

and are sold in sizes including bags of 8.5 OZ.

        3.      The relevant front label representations include the brand, "Cheddar & Sour Cream,"

"Flavored," a slab of cheddar cheese and a dollop of sour cream.



4.      Cheddar cheese flavor is complex mixture of taste sensations, known for its "sharp, pungent flavor" yet also having a "buttery and milk taste."[1]

5.      Scientists have concluded that the unique flavor of cheddar cheese is due to its fatty acids, butyl alcohol, carbonyls, diacetyl and acetoin.[2]

6.      Diacetyl is "an important aroma compound in butter, margarine, sour cream, yogurt, and a number of cheeses, including Cheddar."[3]

7.      Diacetyl and other butter compounds are "an essential part of the flavor complex of

---

[1] Cheddar cheese, https://en.wikipedia.org/w/index.php?title=Cheddar_cheese&oldid=941301433 (last visited Mar. 2, 2020); https://www.keystonefarmscheese.com/cheddar-cheese

[2] E.A. Foda, et al. "Role of fat in flavor of Cheddar cheese." Journal of Dairy Science 57.10 (1974): 1137-1142; T. K. Singh et al., "Flavor of Cheddar cheese: A chemical and sensory perspective." *Comprehensive reviews in food science and food safety* 2.4 (2003): 166-189 (describing principal flavor compounds produced from metabolism of citrate, which occurs when making cheddar cheese).

[3] Stephanie Clark at al. "Diacetyl in foods: a review of safety and sensory characteristics." Comprehensive Reviews in Food Science and Food Safety 14.5 (2015): 634-643.

Cheddar cheese."[4]

8.      A scientist who developed a lexicon for description of cheddar cheese flavor included aromatics associated with diacetyl and milkfat/lactones as being representative of cheddar flavor.[5]

9.      The Product's label makes direct representations with respect to one of its "distinguishable characterizing flavors," cheddar cheese, through the orange colored chips, the block of cheddar cheese, the word "Cheddar" and the orange label. *See* 21 C.F.R. § 101.22(i) (requiring declaration of flavor to truthfully indicate whether the product's flavor is from the characterizing food ingredient or from natural or artificial source materials); *see also* 21 C.F.R. § 101.22(i)(3)(ii) (required labeling where product contains more than one characterizing flavor).

10.     The ingredient list on the back shows that "Cheddar & Sour Cream Seasoning" contains the named foods cheddar cheese and sour cream, but also "Artificial Flavors."

**Ingredients:** Potatoes, Vegetable Oil (Sunflower, Corn, and/or Canola Oil), Cheddar & Sour Cream Seasoning (Maltodextrin [Made from Corn], Salt, Whey, Cheddar Cheese [Milk, Cheese Cultures, Salt, Enzymes], Onion Powder, Corn Oil, Monosodium Glutamate, Natural and Artificial Flavors, Buttermilk, Canola Oil, Sour Cream [Cultured Cream, Skim Milk], Lactose, Butter [Cream, Salt], Sodium Caseinate, Yeast Extract, Citric Acid, Skim Milk, Blue Cheese [Milk, Cheese Cultures, Salt, Enzymes], Lactic Acid, Garlic Powder, Artificial Color [Yellow 6, Yellow 5], Whey Protein Isolate, Sunflower Oil, and Milk Protein Concentrate).

**Ingredients:** Potatoes, Vegetable Oil (Sunflower, Corn, and/or Canola Oil), Cheddar & Sour Cream Seasoning (Maltodextrin [Made From Corn], Salt, Whey, Cheddar Cheese [Milk, Cheese Cultures, Salt, Enzymes], Onion Powder, Corn Oil, Monosodium Glutamate, Natural and ==Artificial Flavor==, Buttermilk, Canola Oil, Sour Cream [Cultured Cream, Skim Milk], Lactose, Butter [Cream, Salt], Sodium Caseinate, Yeast Extract, Citric Acid, Skim Milk, Blue Cheese [Milk, Cheese Cultures, Salt, Enzymes], Lactic Acid, Garlic Powder, Artificial Color [Including Yellow 6, Yellow 5], Whey Protein Isolate,

---

[4] Harold E. Calbert, and Walter V. Price. "A study of the diacetyl in cheese. I. Diacetyl content and flavor of Cheddar cheese." Journal of Dairy Science 32.6 (1949): 515-520.
[5] Tim Steury, The cheddar cheese lexicon, Washington State University Magazine.

Sunflower Oil, and Milk Protein Concentrate).

11.    The only way that the front label could avoid declaring the presence of the artificial flavors is if it does not

12.    If a product contains "any artificial flavor which simulates, resembles or reinforces the characterizing flavor," it has to be identified in the flavor designation on the front label.  *See* 21 C.F.R. § 101.22(i)(2); *compare with* 21 C.F.R. § 101.22(i)(1) ("no artificial flavor which simulates, resembles or reinforces the characterizing flavor").

13.    Based on flavor composition analysis of the Products, the artificial flavor consists of compounds associated with butter flavor.

14.    Because butter flavor is known as enhancing and boosting the flavor of cheddar cheese, it is misleading to not designate the Products as "Artificially Flavored Cheddar & Sour Cream."  *See* 21 C.F.R. § 101.22(i)(2) ("If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored'").

15.    The addition of butter flavor from artificial sources would still have to be declared even though the seasoning ingredient contains butter.

16.    Other brands of cheddar and sour cream ridged potato chips contain cheddar and sour cream seasoning with artificial flavor and identify their products as "Artifically Flavored" on the front label.

17.    These competitor products have the same flavor composition as the Products here, but do not hide their artificial flavor on the ingredient list under the guise of it "rounding out" the

characterizing cheddar flavor.

18.    Describing a flavor as "rounding out" another flavor is a legitimate-sounding yet often meaningless rationale for excluding such flavor from the front label.

19.    To "round out" is defined as "to bring to completion or fullness" which in the case of a flavor, is equivalent to simulating and reinforcing the characterizing flavor.[6]

20.    Flavor manufacturers are familiar with flavor regulations and believe that describing a flavor as "rounding out" another flavor exempts it from the front label flavor designation based on a single comment in the Federal Register.

21.    A prominent manufacturer of dairy flavors noted "that butter flavor complements processed and cheddar cheese profiles by rounding out the named profile and adding a more fatty taste."[7]

22.    Further, the long-established connection of butter compounds with contributing to the unique profile of cheddar cheese means that artificial butter flavoring in a cheddar cheese flavored product is required to be disclosed to consumers.

23.    Defendant knows consumers will pay more for the Product because the label does not state "artificially flavored"

24.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud consumers.

25.    Defendant has sold more of the Product and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

26.    The value of the Product that plaintiff purchased and consumed was materially less

---

[6] Merriam-Webster, round out.
[7] *See* Butter's Got Cheese's Back: Part One, October 17, 2014, Edlong.com ("Our dairy expertise has shown us that butter flavor complements processed and cheddar cheese profiles by rounding out the named profile and adding a more fatty taste.").

than its value as represented by defendant.

27.    Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

28.    The Product contains other representations which are misleading and deceptive.

29.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.79 per 8.5 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

30.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

31.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

32.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

33.    This is a reasonable assumption because defendant's Products are sold in thousands of stores across the country and have been sold bearing the allegedly misleading claims for at least three years.

34.    Plaintiff is a citizen of New York.

35.    Defendant is a Delaware corporation with a principal place of business in Plano, Collin County, Texas and is a citizen of Texas.

36.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods

within New York.

37.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

38.     A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

39.     Plaintiff is a citizen of Larchmont, Westchester County, New York.

40.     Defendant Frito-Lay North America, Inc. is a Delaware corporation with a principal place of business in Plano, Texas, Collin County.

41.     During the relevant statutes of limitations, plaintiff purchased, used or consumed the Product within this district and/or State for personal consumption in reliance on the representations.

## Class Allegations

42.     The classes will consist of all purchasers of the Products in New York, the other 49 states and a nationwide class, during the applicable statutes of limitations.

43.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

44.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

45.     Plaintiff is an adequate representative because his interests do not conflict with other members.

46.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

47.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

48.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

49.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York GBL §§ 349 & 350
(Consumer Protection from Deceptive Acts)

50.     Plaintiff incorporates by reference all preceding paragraphs.

51.     Plaintiff and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product or service type.

52.     Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

53.     Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

54.     Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers the Product does not contain artificial flavor which resembles, simulates or reinforces the characterizing flavor of cheddar cheese.

55.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

56.     Plaintiff incorporates by reference all preceding paragraphs.

57.     Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

8

58.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers the Product does not contain artificial flavor which resembles, simulates or reinforces the characterizing flavor of cheddar cheese.

59.   Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

60.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

61.   The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

62.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

63.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

64.   Plaintiff incorporates by reference all preceding paragraphs.

65.   The Products were manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

66.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

67.   This duty is based, in part, on defendant's position as one of the most recognized

companies in the nation in this sector.

68.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

69.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

70.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

71.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

72.   Plaintiff incorporates by references all preceding paragraphs.

73.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers the Product does not contain artificial flavor which resembles, simulates or reinforces the characterizing flavor of cheddar cheese.

74.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true.

75.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

76.   Plaintiff incorporates by reference all preceding paragraphs.

77.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

10

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   March 1, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP

Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

7:20-cv-01810
United States District Court
Southern District of New York

Oscar Ithier, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Frito-Lay North America, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  March 1, 2020

/s/ Spencer Sheehan
Spencer Sheehan